**THE STROJNIK FIRM LLC**
Attorneys at Law
Suite 1401
3030 North Central Avenue
Phoenix, Arizona 85012
(602) 297-3019

Peter Kristofer Strojnik AZBN 026082 CABN 242728
strojnik@skplaw.com
Attorney for Plaintiff Roxanne Gutman

Peter Strojnik, Esq. – Arizona Bar No. 006464
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: strojnik@aol.com
Attorney for Plaintiff Roxanne Gutman

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ROXANNE GUTMAN, a married woman,<br><br>Plaintiff,<br><br>vs.<br><br>WICK COMMUNICATIONS CO., an Arizona corporation *dba* Territorial Newspapers; SEAN ARDRY and STEPHANIE ARDRY, husband and wife,<br><br>Defendants. | NO. 4:09-cv-00578-JMR<br><br>**RULE 15 MOTION TO AMEND COMPLAINT** |

**MOTION**

Plaintiff Roxanne Gutman, by and through undersigned counsel, hereby moves this Court for an order permitting her to amend her Complaint pursuant to Rule 15(a)(2) of the

Federal Rules of Civil Procedure. Plaintiff seeks to clarify the existing Title VII counts and add a cause of action for Intentional Infliction of Emotional Distress pursuant to *Ford v. Revlon*, infra.

WHEREFORE, Plaintiff respectfully requests the Court grant her Motion to Amend and to permit her to file the Lodged First Amended Complaint, which will be filed concurrently herewith as Doc. 8. This Motion is more fully supported by the below Memorandum of Points and Authorities, which by this reference is incorporated herein.

**MEMORANDUM OF POINTS AND AUTHORITES**
**IN SUPPORT OF MOTION TO AMEND**

**I. INTRODUCTION**

Plaintiff Roxanne Gutman was an advertising saleswoman at Defendant Wick Communications for several years. During her employment, her supervisor – Defendant Sean Ardry – exposed her to an extremely hostile and sexual environment for over a year that included text messages asking to taste her "pink parts", in person and at work requests for her to go into his office and give him sexual pleasure, and threats that if she told anyone about this harassment she would be fired. After the Plaintiff rejected Defendant Ardry's sexual advances, Defendant Ardry began yelling and intimidating Plaintiff on a daily basis, which he did not do with male employees. Plaintiff made several complaints about Defendant Ardry's behavior, and although HR admitted there was a problem, it did nothing to address Plaintiff's complaints. Ultimately, Defendant Ardry discovered that Plaintiff had complained about the hostile work environment, and he terminated Plaintiff's employment under the guise of accepting a fictitious resignation from her.

## II. PROCEDURAL BACKGROUND

On August 4, 2009, Plaintiff Roxanne Gutman filed a Complaint in pro per for employment discrimination and wrongful termination against Defendant Wick Communications Co. and Defendant Sean Ardry in the Pima County Superior Court, No. C2009-6081. (Doc. 1-1). Defendant subsequently removed the action to this Court on October 13, 2009. (Doc. 1).

## III. FACTUAL BACKGROUND

Ms. Gutman began her employment with Wick on December 10, 2004 as a classified advertising saleswoman. *See*, Doc. 8 at ¶11 (Lodged FAC). Defendant Ardry came to be employed with Wick in August 2005 and was Ms. Gutman's supervisor. *Id*. at ¶12. In or around the Fall of 2007, Defendant Ardry began making unwanted sexual advances toward Ms. Gutman including sending her sexually explicit text messages and sexually propositioning her at work. *Id*. at ¶13-14. Examples of these sexual advances included making statements such as "I wonder what you taste like" or "If you show me your pink parts, I'll show you my dirty parts." *Id*. Ms. Gutman was ashamed at the advances being made and continually told Defendant Ardry to stop, which he finally did several months after he had started. *Id*. at ¶14-15.

Defendant Ardry then began to yell at, intimidate and harass Ms. Gutman on a daily basis at work. *Id*. Defendant Ardry would intimidate and blame Ms. Gutman for work deficiencies that were created by others or were non-existent, but he would not treat the other male employees in a similar manner. *Id*. Ms. Gutman complained to the HR department at Wick on four separate occasions, and she made sure to alert HR to the fact that Defendant

Ardry was treating her differently than the male employees. *Id*. at ¶16. The HR department recognized there was a problem, but it took no action to address Ms. Gutman's complaints. *Id*. Ultimately, the hostile environment was so objectively intolerable that Ms. Gutman resigned. *Id*.

After Defendant Ardry convinced Ms. Gutman to return to work with promises of change, he again started with his sexual advances. *Id*. at ¶17-18. From January 2008 until April 2008, Defendant Ardry made sexual comments and propositions at work including comments such as "you sure look hot today. Let me know if you change your mind. The offer still stands." *Id*. at ¶18-20. Defendant Ardry propositioned Ms. Gutman by asking her to "go in my office, close the door, get under my desk and I'll show you what I taste like." *Id*. Along with these sexual propositions, Defendant Ardry would make Ms. Gutman aware that her job would become easier if she succumbed, and more difficult if she refused. *Id*. After Ms. Gutman's repeated requests for him to stop, he did in April 2008. *Id*.

However, Defendant Ardry again began to threaten, intimidate and yell at Ms. Gutman on a daily basis. *Id*. at ¶21-22. Defendant Ardry told Plaintiff that if she told anyone about his sexual propositions, he would "walk you out that door myself", which meant that he would fire her. *Id*. Following her resignation in December 2007, Plaintiff made an additional four complaints to HR about Defendant Ardry's behavior, but HR did nothing to address the issue. *Id*. at ¶23.

In June 2008, Ms. Gutman made a fifth post-resignation complaint to HR. *Id*. at ¶24. The HR department responded by giving Ms. Gutman another supervisor, but it kept Defendant Ardry's work station next to Ms. Gutman's, which resulted in continued yelling, intimidation

and threats. *Id*. Ultimately, on or around July 11, 2008, Plaintiff advised Defendant Ardry that she wanted to meet with him and HR together to resolve the hostile work environment. In response, Defendant Ardry terminated Ms. Gutman under the guise of a fictitious resignation letter that he drafted, but Ms. Gutman did not sign. *Id*. at ¶25.

## IV. ARGUMENT AND SUPPORTING LAW

### A. Justice Warrants Permitting Plaintiff to Amend Her Complaint

Rule 15(a)(2) of the Federal Rules of Civil Procedure states a party may amend the pleading with leave of the Court, and the "court should freely give leave when justice so requires." "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citations and quotations omitted); *accord, Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

As an initial matter, Plaintiff has not yet amended her Complaint, and there is no bad faith associated with this amendment. Furthermore, there has been no undue delay as Plaintiff just recently retained counsel, and she had no knowledge of the applicable law that is the subject of the IIED count sought to be added. Finally, there would be no prejudice to Defendants because discovery has not yet taken place, and there has yet to be a scheduling conference or scheduling order.

### B. Plaintiff's Amended Complaint Would Not Be Futile

A proposed amendment is futile if no set of facts can be proven that would constitute a valid and sufficient claim. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In her lodged Amended Complaint, Plaintiff is merely cleaning up the Title VII counts and adding a count of IIED against all Defendants.

### i. Count 1: Title VII Hostile Work Environment.

Title VII proscribes discrimination based on, *inter alia*, sex.  42 U.S.C. § 2000e. Harassment based on sex becomes unlawful when it "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment." 29 C.F.R. § 1604.11(a). To prevail on a hostile work environment claim based on sex, a plaintiff must demonstrate: "(1) that he was subjected to verbal or physical conduct of a … sexual nature; (2) that the conduct was unwelcome; … (3) that the conduct was sufficiently severe or pervasive to alter the plaintiff's employment or create an abusive working environment." *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998). Additionally, the plaintiff must have "perceived the working environment to be abusive or hostile." Ninth Circuit Model Civil Jury Instructions, 10.2A. Finally, the plaintiff must demonstrate that "a reasonable women in the plaintiff's circumstances would consider the working environment to be abusive or hostile." *Id*. "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

In the lodged amended pleading, Plaintiff adequately alleges a violation of Title VII because her supervisor repeatedly made sexual advances toward her and conditioned the terms of her employment not only on whether she acquiesced to his sexual advances, but also on

whether she complained about his sexual advances. Ms. Gutman's outward display of disapproval of Defendant Ardry's actions was demonstrated on several occasions, e.g. ten complaints to HR, resignation in December 2007, and constant requests that Defendant Ardry stop. Certainly Defendant Ardry's modus operandi of yelling, intimidation, and threats following sexual favor requests would be severely objectionable to any reasonable woman. Additionally, Defendant Ardry did not yell at other male employees. *See, EEOC v. National Education Assoc.*, 422 F.3d 840 (9th Cir. 2005).

**ii. Count 2: Title VII Retaliation.**

Title VII defines "retaliation" as a form of unlawful discrimination and states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because [the employee] has opposed any employment practice made unlawful by this subchapter." To establish a prima facie case of retaliation, the plaintiff must demonstrate: "1. she engaged in protected activity; 2. her employer subjected her to an adverse employment action; and 2. a causal link exists between the protected activity and the adverse action." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). Protected activities include complaints to human resources and informal complaints to supervisors. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1285 (9th Cir. 2001); *Equal Employment Opportunity Commission v. Hacienda Hotel*, 881 F.2d 1504, 1514 (9th Cir. 1989). Termination is an adverse employment action. *Ray*, 217 F.3d at 1242-43. Finally, "temporal proximity between a protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation…" *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003).

Plaintiff engaged in several protected activities including ten complaints to HR and several requests to Defendant Ardry, her supervisor, to stop his sexual requests and intimidating behavior.  Plaintiff was subjected to an adverse employment action when she was terminated, and causation is demonstrated by temporal proximity because three weeks prior Plaintiff complained to HR.  Furthermore, temporal proximity is also shown by Plaintiff's request to address Defendant Ardry's behavior with HR quickly followed by Defendant Ardry terminating Plaintiff.  Finally, actual causation is clear because Defendant Ardry threatened to fire Plaintiff if she told anyone about his behavior.  After Defendant Ardry discovered Plaintiff complained to HR, he fulfilled his promise.

### iii.  Count 3:  IIED Against Defendant Ardry.

A plaintiff must prove the following three elements to demonstrate a claim for intentional infliction of emotional distress:

> [F]irst, the conduct by the defendant must be 'extreme and outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.

*Ford v. Revlon*, 734 P.2d 580, 585, 153, Ariz. 38, 43 (1987).  The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exchange*, 460 P.2d 666, 668, 10 Ariz. App. 560, 562 (Ct. App. 1969) (citations and quotations omitted).  Additionally, "intentional inflictin o femotional distress is often based upon claims of sexual harassment."  1 L. Larson, Employment Discrimination § 41.67(b), at 8-148 (1984).

Plaintiff adequately alleges an IIED claim against Defendant Ardry because his sexual propositions and tasteless sexual comments were extreme and outrageous, especially in the workplace and in light of his supervisory status over Plaintiff. Certainly Defendant Ardry had to have known his actions would result in Plaintiff suffering severe emotional distress considering the prevention of workplace harassment is so prevalent in society, and Plaintiff's several requests that he stop. Finally, Plaintiff pleads she suffered severe emotional distress, which was also demonstrated by her outward physical symptoms.

### iv. Count 4: IIED Against Defendant Wick.

Defendant Wick is first vicariously liable under an IIED theory based on the acts of one of its supervisors – Defendant Ardry. Defendant Wick is also independently liable for IIED pursuant to *Ford v. Revlon*, supra. In *Ford*, the Court held that an employer's failure to take appropriate action in response to an employee's complaints of sexual harassment constitutes the tort of intentional infliction of emotional distress. *Ford*, 153 Ariz. at 45.

Plaintiff made numerous complaints about the harassment she was receiving both to HR and to Defendant Ardry himself, and Defendant Wick did nothing to address her several complaints. Ultimately, she was fired by Defendant Ardry for complaining.

### V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Motion be granted. A proposed form of Order is attached as Exhibit 1. A bracketed/underlined copy of the lodged First Amended Complaint is attached as Exhibit 2.

RESPECTFULLY SUBMITTED this 19th Day of March, 2010.

**THE STROJNIK FIRM LLC**



Peter Kristofer Strojnik
3030 North Central Avenue
Suite 1401
Phoenix, Arizona 85012
Attorney for Plaintiff